Terry Scannell, OSB No. 853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB No. 093777
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland St, Suite 200
Tigard, Oregon 97223
(503) 776-0806
*Attorneys for Plaintiff*

Patrick M. Gregg, OSB No. 093698
*gregg@corey-byler.com*
Corey Byler & Rew, LLP
PO Box 218
Pendleton, OR 97801
(541) 276-3331
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PENDLETON DIVISION**

**JANE DOE**,

Plaintiff,

v.

Detective Sergeant **BILL WRIGHT**, Lieutenant **KEITH KENNEDY**, and Chief **DARLA HUXEL**, in their individual and official capacities; **CITY OF UMATILLA**, a municipal entity; and **JOHN DOES 1-10**, who are individuals or entities currently unknown to the Plaintiff,

Defendants.

Case No. 2:23-cv-00332

**COMPLAINT**

1. Violation Equal Protection 42 U.S.C. §1983;
2. Violation Due Process 42 U.S.C. §1983; and
3. Negligence *Per Se*

**Demand for Jury Trial**

//

//

//

//

## PARTIES, VENUE, AND JURISDICTION

1.

Plaintiff Jane Doe ("Jane Doe") was a thirteen-year-old female who resided in Umatilla County at the time the rape occurred. She is now eighteen and continues to reside in Umatilla County.

2.

Defendant Detective Sergeant Bill Wright ("Det. Sgt. Wright") was at all times relevant to this matter, an employee of the Umatilla Police Department (the "UPD") acting within the scope and course of his employment and under the color of state law.

3.

Defendant Lieutenant Keith Kennedy ("Lt. Kennedy") was at all times relevant to this matter, an employee of the UPD, a supervisor to Det. Sgt. Wright, and acting within the scope and course of his employment and under the color of state law.

4.

Defendant Chief Darla Huxel ("Chief Huxel") was at all times an employee of the UPD, a supervisor of Det. Sgt. Wright, and acting within the scope and course of her employment and under the color of state law.

5.

Defendant City of Umatilla (the "City") is a municipality that includes the Mayor, City Council, City Manager, and the UPD.

//

//

//

6.

John Does 1-10 are individuals or entities who are unknown to Plaintiff at this time and either in privity with the named Defendants, or who are agents, principals of, or aided and abetted, the named Defendants.

7.

This is an action for damages pursuant to 42 U.S.C. §1983 based upon the violations of Jane Doe's rights under the Fourteenth Amendment to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. §1331 and §1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Supplemental jurisdiction over Jane Doe's state law claims is appropriate pursuant to 28 U.S.C. §1367.

8.

Venue is proper in the District of Oregon Pendleton Division, in that the events and conduct complained of herein all occurred in Umatilla County.

**PRELIMINARY STATEMENT**

9.

Jane Doe, at the time a thirteen-year-old girl, was raped and filmed by a 34-year-old Florida man in Umatilla on March 24, 2018. This encounter was the result of several months of online grooming, harassment, and threats. The victim did not immediately tell her parents, friends, or the police. However, roughly a week after the rape, the predator sent a video of the sexual assault to a family member of Jane Doe; being quiet was no longer an option and she told her story. Her father was the first to take the child into the UPD. Jane Doe was ashamed and embarrassed by what happened. She told Det. Sgt. Wright about the events that unfolded. Jane Doe knew the predator's first name, that he had traveled from out of state, the hotel he raped her in, and was able to give a description of him. A few days later, Jane Doe returned to the UPD

with her mother to provide the police with a video of the assault and inquire about any progress. It was clear from Det. Sgt. Wright's statements to the thirteen-year-old rape victim and her mother that he did not believe her, stating "young girls make stuff up like this all the time," despite having a video of the incident. Det. Sgt. Wright informed the victim and her mother that if they wanted the police to find the predator and take action, they needed to come back with a photo and his full name.

10.

For two years, Jane Doe and her family endured constant harassment, death threats, and the type of abuse only a child sexual predator can impose from thousands of miles away. Despite the abuse, Jane Doe continued working to attempt to get a photo, a full name, or any information she could take to the police that would make them believe her. The police did nothing. Det. Sgt. Wright and his superiors did not send the video in for forensic analysis, send the phone in to pull the data from all the conversations, attempt to obtain a subpoena or warrant for social media activity, or check the security footage from the hotel themselves; they had the hotel clerk do that.

11.

After enduring two years of abuse, Jane Doe finally succeeded in obtaining a photo of her perpetrator's face and his full name, Michael Wayne Lyon (the "Predator"). She then returned with her mother to the UPD, requested Det. Sgt. Wright, and presented him with the evidence he had asked for. He responded with, "how do I know you are still not lying," and "if you're lying and I arrest this man, he will sue." Fortunately, Jane Doe's mother decided to call the FBI who opened a case immediately. Based largely on the evidence available to the UPD in 2018 and 2020, the FBI arrested the Predator who sexually abused and harassed Jane Doe and he was found guilty of "Using a Minor to Produce Visual Depictions of Sexually Explicit Conduct" in

August of 2022, and is facing up to 35 years in federal prison. *See* Dist. Or. Case No. 3:21-cr-00035-IM (the "Criminal Case").

12.

Det. Sgt. Wright refused to make any attempt at investigating the rape of a child because of bias he holds against young women. His superiors failed to conduct any oversight or intervene in Det. Sgt. Wright's conduct over a several year period. The City failed to ensure proper equal rights and minor sexual assault training for the police department and continue to ignore the lack of training and oversight in the UPD. Every one of the actions and inactions the Defendants took, or failed to take, resulted in a child rape victim not being afforded her constitutional right to equal protection and due process under the law. The failures on the part of Det. Sgt. Wright, his superiors, and the City, are unconscionable and if not addressed, will encourage further discrimination by law enforcement and result in more young women not being afforded their rights as U.S. Citizens.

13.

As a result of the Defendants' acts and Omissions, Jane Doe stopped attending school after she reported the incident in 2018 because she did not feel safe. The child suffered immeasurable physical and emotional damage due to the continuing harassment by the Predator during the two years she was forced to investigate her own rapist. This is a direct result of the inaction of the police and their minimal efforts to identify and stop him, as well as their belief that young girls lie about rape.

**FACTS COMMON TO ALL CLAIMS**

14.

Jane Doe turned fourteen in April of 2018 and eighteen in April of 2022.

//

15.

In October 2017, Jane Doe began chatting online with the Predator, a man named Michael Wayne Lyon, who initially claimed that he was fifteen years old.

16.

In the following months, Jane Doe discovered the Predator was, in fact, a thirty-four-year-old man from Florida.

17.

After learning the Predator's true age, Jane Doe attempted to cut off all contact with him, but he persisted by continuing to send threats, inappropriate sexual messages, and photos.

18.

In January 2018, the Predator began contacting Jane Doe's brother and one of her friends from school using various social media applications. These messages were frequently disturbing and threatening.

19.

In late March 2018, the Predator flew to Seattle, Washington, rented a car, and drove to Umatilla, Oregon, where he rented a room at the Comfort Inn (the "Hotel"). He then coerced Jane Doe into coming to his hotel room. While in the room, the Predator induced Jane Doe to perform oral sex on him while he videotaped the encounter. He then raped Jane Doe twice before taking her home.

20.

The Predator used his real name, Michael Lyon, on both the room registration, and his car rental. He also gave the correct address to his place of employment and his correct birthdate.

//

//

21.

On or about March 31, 2019, the Predator sent a copy of the explicit video to Jane Doe's brother. In the days that followed, Jane Doe's mother and father became aware of the video. Jane Doe's mother was able to get a recording on her phone.

22.

On or about April 4, 2018, Jane Doe's father took her to the UPD where Det. Sgt. Wright took the report of the sexual assault. Det. Sgt. Wright testified during the Criminal Case that he talked to Jane Doe "about ten minutes or less," wrote a report, and referred her to the Guardian Care Center for another interview. He also had a short interview with Jane Doe's father.

23.

During the interview with Jane Doe's father, Det. Sgt. Wright focused on questioning why Jane Doe did not come to the police earlier but assured Jane Doe's father there would be a full investigation.

24.

Det. Sgt. Wright testified that he retrieved a phone from Jane Doe's father, which Jane Doe used over the previous eight months to communicate with the Predator, and a windbreaker that Jane Doe had been wearing the night the rape occurred. He also testified that Jane Doe was able to give him a physical description, the name "Michael Lee," identify that the incident happened at the Hotel, a description of the car he rented, and information that the Predator was not from the area and had to travel.

25.

Det. Sgt. Wright further testified that shortly after reporting the rape to Det. Sgt. Wright, Jane Doe attended an interview with an employee of The Guardian Care Center. During that

interview, Det. Sgt. Wright claimed that Jane Doe was able to provide more information than in her initial interview.

26.

On or about April 6, 2018, Jane Doe's mother brought the video recorded by the Predator into the UPD station for Det. Sgt. Wright to review. She also emailed a copy of the video to Det. Sgt. Wright.

27.

When asked about the investigation by Jane Doe and her mother, Det. Sgt. Wright informed them he did not believe Jane Doe was telling the whole story because "girls this age withhold information" and it could be that Jane Doe is "just upset at a boy and trying to get back at him." He continued by explaining that he thought Jane Doe seemed too calm, and in his experience, young girls are emotional and upset in this situation. Det. Sgt. Wright expressed his concern that if the "UPD were to arrest the wrong man they would be sued" and he could not take that chance.

28.

Det. Sgt. Wright then told Jane Doe and her mother that if they wanted a full investigation, they would need to find and submit to the UPD a clear picture of the Predator's face as well as his full name. He also told Jane Doe's mother that if she were a "good mom," she would find a photo and the name of her daughter's abuser.

29.

Within a few weeks of these meetings, Det. Sgt. Wright visited the Plaintiff's father at his home. Jane Doe's father recounts that this meeting occurred so that Det. Sgt. Wright could retrieve the phone Jane Doe was using and that no phone was turned over in their initial meeting at the UPD station.

30.

At this home visit, Det. Sgt. Wright assured Jane Doe's father that the police had reviewed the security tapes at the Hotel, conducted interviews with the Hotel staff, and were doing a thorough investigation. However, Det. Sgt. Wright interjected that the case was not looking good because "it was Jane Doe's fault for sneaking out and withholding information from the police." Det. Sgt. Wright also informed Jane Doe's father that he did not believe Jane Doe was ever at the Hotel.

31.

Within a couple of months after the first visit to Jane Doe's father's home, Det. Sgt. Wright made another visit. On the second visit he informed Jane Doe's father that the investigation had not turned up anything and that the police could not move forward.

32.

Det. Sgt. Wright's sworn testimony in the Criminal Case against the Predator gave more detail about the complete lack of investigation into Jane Doe's claims regarding the sexual assault of a minor. Neither he nor anyone with the department submitted Jane Doe's phone for lab analysis nor was any data downloaded or preserved. The phone had been used for months to communicate with the Predator and Det. Sgt. Wright admitted the phone could have held important information. The phone was turned off, placed in a plastic bin, and did not move until April 19, 2019, when Det. Sgt. Wright alleged that he returned the phone to Jane Doe's father. Jane Doe's father denies ever getting the phone back.

33.

Det. Sgt. Wright never submitted the windbreaker for a forensic analysis.

//

//

34.

Furthermore, it was the Hotel clerk, not Det. Sgt. Wright or anyone with the UPD, who reviewed the Hotel's security tapes. A copy of the video surveillance was never obtained by Det. Sgt. Wright, or the UPD.

35.

Neither Det. Sgt. Wright nor anyone at the UPD subpoenaed or requested search warrants for any smart phone application or social media platforms the Predator used to groom Jane Doe, distribute the video, and repeatedly sexually harass, and threaten her.

36.

At no point during Det. Sgt. Wright's investigation did he ask for or obtain Jane Doe's brother's, or the friend's phone, whom the Predator had contacted multiple times through his social media accounts.

37.

Jane Doe's case was never sent to local prosecutors for review after the 2018 and 2020 visit to UPD, she was never informed of or afforded her rights under the Oregon Constitution, or O.R.S. 147.035, and the Sexual Assault Resource Team ("SART") was never notified. Neither Det. Sgt. Wright nor anyone with the UPD notified federal authorities of the internet crimes or interstate nature of the crime.

38.

Det. Sgt. Wright never informed Jane Doe or her parents that her case fell under federal jurisdiction and that they could or should contact the FBI.

39.

From April 2018 until January 2020, Jane Doe and her mother took it upon themselves to identify and gather evidence about the man who raped and filmed her to satisfy Det. Sgt.

Wright's requirement that they needed to find a clear picture of the Predator's face and his full name.

40.

During this two-year period, Jane Doe was forced to endure constant messages containing threats, unlawful sexual advances, and obscene photos from the Predator to gather more evidence for the UPD.

41.

Jane Doe tried to limit contact with the Predator but felt that if she blocked or entirely refused to interact with the Predator, she would be unable to gather the evidence Det. Sgt. Wright required to investigate the crime and bring the Predator to justice.

42.

Several times during the two-years Jane Doe attempted to gather evidence the Predator made very specific and troubling threats. At one point he had a photo taken from outside the family home, texted it to Jane Doe and threated to murder her entire family. Another threat involved very specific and gruesome things he was going to do to Jane Does sister. Jane Does father reported these threats to the UPD. However, there was never any follow up with Jane Doe or her family, the phones and texts from the Predator was never gathered as evidence by the UPD and the harassment was allowed to continue without any police involvement.

43.

Jane Doe suffered severe emotional distress and physical injury during this period due to the continuing abuse of the Predator.

//

//

//

44.

In January 2020, Jane Doe and her mother learned of another fourteen-year-old girl from the area that had been contacted by the Predator similarly to Jane Doe. During that girl's brief encounter with the Predator on Snapchat, the Predator acknowledged he knew Jane Doe.

45.

The fourteen-year-old girl and her mother took their case to the Hermiston Police Department. There, Detective Victor Gutierrez obtained a warrant for Snapchat records and found evidence the Predator was in contact with Jane Doe and had been unlawfully communicating with other underage girls in attempts to illicit sex. Detective Gutierrez was made aware of Jane Doe's 2018 case involving the same suspect with the UPD. After investigation, Detective Gutierrez forwarded the fourteen-year-old's case to the Internet Crimes Against Children task force.

46.

Detective Gutierrez testified at the Criminal Case trial that he became aware of the UPD's case involving the same Perpetrator and Jane Doe. Contacting Det. Sgt. Wright regarding Jane Doe's case and its connection to the new allegations are standard police procedure. No one from the UPD, including Det. Sgt. Wright, contacted Jane Doe regarding the new investigation by Hermiston Police Department, nor was a new case opened.

47.

The Predator sent Jane Doe a message sometime between December 2019 and January 2020, threatening to kill her and her young child.

48.

In January 2020, after obtaining a photo, multiple chat threads, and the name of the Predator, Jane Doe and her mother went back to the UPD and spoke with Det. Sgt. Wright where

they presented the information they had collected, including a photo of the Predator, and the news that he was now threatening to murder Jane Doe, her young child, and other family members.

49.

Det. Sgt. Wright informed them the photo was not helpful because, "the man was wearing sunglasses." Det. Sgt. Wright questioned Jane Doe and her mother, asking, "how do we know she is still not lying? How do we know we are not ruining some guy's life because she is still mad?" Again, he explained how he did not believe Jane Doe had told the "whole story" and that if he arrested the Predator and Jane Doe was lying, then the Predator would sue the UPD.

50.

Upon being rejected by Det. Sgt. Wright for the second time, and in fear for her daughter and granddaughter's life, Jane Doe's mother found a number for the FBI with a Google search and called. The FBI immediately opened a case.

51.

Through the evidence and testimony provided by Jane Doe, the FBI secured multiple warrants for the social media platforms, located the Hotel and car rental invoices with the Predator's name from the 2018 incident, and arrested Michael Wayne Lyon.

52.

In August 2022, the Predator was found guilty of "Using a Minor to Produce Visual Depictions of Sexually Explicit Conduct" in the Criminal Case and sentenced to twenty-five years in federal prison. At trial, the DOJ relied almost exclusively on evidence that was available to the UPD in both 2018 and 2020.

//

//

53.

From the time Jane Doe first went to the UPD in April 2018 through the present, there has never been a full investigation conducted by the UPD nor has this case ever been prosecuted by local authorities at the state level. The two additional counts of rape that occurred that night have never been charged or prosecuted.

54.

Jane Doe has never been contacted by the Umatilla County District Attorney's Office.

55.

In 2021, Jane Doe's mother was contacted by Det. Sgt. Wright and asked to resend the evidence she and her daughter had provided in 2018 and 2020 because the UPD had lost it.

56.

Jane Doe has never been afforded her rights or compensation allotted for sexual assault victims under the Oregon Victim's Rights statutes. O.R.S. § 147.417, *et. seq*.

57.

Neither Lt. Kennedy nor Chief Huxley saw to it that Det. Sgt. Wright afforded Jane Doe her constitutional rights as a victim under Oregon law at any time between 2018, and the present. *See e.g.*, O.R.S. §§ 147.417 and 147.410. Nor did they ensure Jane Doe was afforded her rights under the 14th Amendment of the United States Constitution.

58.

The city council, and specifically the City Manager and Deputy City Manager, have a duty to ensure police receive proper training and employ proper practice and procedure when dealing with the public. The Umatilla City Manager can fire and investigate city employees, including police officers.

//

59.

There is no publicly available information that indicates the City or the UPD investigated and reviewed the handling of Jane Doe's case. No one implemented new training or policies to ensure a female child's plea for help after being sexually assaulted by an adult man is not ignored again in Umatilla. Det. Sgt. Wright faced no consequences. Det. Sgt. Wright still holds the position of Detective Sergeant in Umatilla.

60.

In 2018, the UPD, with the approval of the City's City Council, had a budget that included only $10,000 in police training *and* travel. The total UPD budget in 2018 was $1.2 million. Only $8,025, or 0.6% of the total budget, was used for training, of which travel expenses were included.

61.

UPD spent nearly as much on uniforms in 2019 ($7,000) as they did on training in 2018. Neither the City Council nor the City Manager has raised concerns about the lack of priority the UPD gives to training.

62.

From 2018 through 2022, there is no publicly available information that would indicate the City Council, City Manager, or Police Chief, were concerned with oversight of how the police conducted sexual assault investigations of a minor, or that there was any focus on adequate response to the sexual predation of minors.

63.

During this same period, Chief Huxel reported to the City Council about the revenue generated by code enforcement. There is no public record of any testimony about sexual assault of minors in the community.

64.

On August 11, 2022, the Department of Justice released a story about the conviction of the Predator, Michael Lyon. *Jury Convicts Florida Man for Using a Minor to Produce Sexually Explicit Material*, United States Attorney's Office District of Oregon (Aug. 11, 2022), *https://www.justice.gov/usao-or/pr/jury-convicts-florida-man-using-minor-produce-sexually-explicit-material*. The article points out that the UPD did little in the way of investigation. "Local Authorities interviewed the child's parents and several other witnesses but did not pursue the case further."

65.

Jane Doe was unaware that the UPD had violated her Constitutional rights until after the Criminal Case trial had concluded. Neither Jane Doe, nor her mother, understood they could file a civil complaint until a friend explained their rights shortly after the Criminal Case trial.

66.

At all material times, the Defendants were acting in their official capacity as employees of the City.

67.

The UPD's Mission Statement reads, "It is the mission of the Umatilla Police Department to provide a fast, effective, and professional service to the citizens of the City of Umatilla. We strive to accomplish our 3 R's of policing: "**Doing the RIGHT thing, For the RIGHT reason, At the RIGHT time.** All to *protect constitutional guarantees* and create an environment of safety, security and respect while maintaining a partnership between the community and police." (Emphasis added).

//

//

68.

O.R.S. § 419B.010 requires child abuse to be reported to the local branch of the Oregon Health and Human Services by mandatory reporters. O.R.S. § 419.005 makes clear that police are mandatory reporters.

69.

Jane Doe turned eighteen on April 14, 2022, her first contact with the UPD was on April 4, 2018. She could not have known, or have reasonable opportunity to know, of any cognizable injury and the identities of the parties responsible for those injuries until this time. The relevant Oregon statute, which governs tolling for minors reads as follows:

> (1) Subject to subsection (2) of this section, if a person is entitled to bring an action mentioned in O.R.S. §§ 12.010 to 12.050, 12.070 to 12.250, or 12.276, and at the time the cause of action accrues the person is a child who is younger than 18 years of age, the statute of limitation for commencing the action is tolled for so long as the person is younger than 18 years of age.
>
> (2) The time for commencing an action may not be extended under subsection (1) of this section for more than five years, or for more than one year after the person attains 18 years of age, whichever occurs first. O.R.S. § 12.160.

On September 28, 2022, Jane Doe provided tort claim notices to the defendants under O.R.S. § 30.265, which is within the 180-day notice requirement under this statute.

70.

Neither Det. Sgt. Wright, nor his superiors sent Jane Doe's information to the local Human Services department, as required by Oregon statute after the 2018 or subsequent 2020 visit reporting the sexual assault of a minor.

//

71.

The UPD investigated several violent crimes involving male victims between 2018 and 2020, which they sent to the Umatilla County Prosecutor's office.

72.

The UPD utilizes federal funds and data systems.

## CLAIMS FOR RELIEF

### First Claim for Relief

### Violation of Equal Protection Under 42 U.S.C. § 1983

#### *A. Count One: As to Det. Sgt. Bill Wright Only*

73.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

74.

Count One is pleaded by Jane Doe against Det. Sgt. Wright in his individual capacity.

75.

Det. Sgt. Wright was employed by the UPD and acting in his official capacity during all material times regarding this cause of action.

76.

From March 2018 until April 2022, Jane Doe was a minor female and therefore counted as part of a protected class under the Fourteenth Amendment Equal Protection Clause.

77.

Law enforcement officials may not selectively deny services to protected classes or otherwise discriminate in the provision of such services on the basis of an animus held for a protected class. *Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010). Det. Sgt. Wright failed to conduct a reasonable investigation of Jane Doe's sexual assault claim due to his

discriminatory animus towards minor females. Det. Sgt. Wright's intent to discriminate is clearly established by his statements "girls this age withhold information," and "[Jane Doe is] just upset at a boy and trying to get back at him," and his expressed sentiment that young girls get emotional and upset in this situation. This is further evidenced by his willingness to consider the Predator's rights before the young female victim's rights who offered compelling evidence of her abuse as expressed when he, on more than one occasion, worried out loud that if the UPD were to arrest the wrong man, the department could be sued.

78.

An officer's statements alone can be evidence of discriminatory intent. *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 701 (9th Cir. 1988). Det. Sgt. Wright made offensive comments about what Jane Doe's mother should do based on her gender ("if she was a good mom, she would find a photo and name of her daughter's abuser") but comparatively simply assured Jane Doe's father that the police would conduct a thorough investigation. These statements shed critical light into why Det. Sgt. Wright, with over twenty years on the force, and video evidence of a thirteen-year-old girl being sexually assaulted, chose not to investigate the rape of a thirteen-year-old girl.

79.

Departure from procedure can show intent. Oregon Child Abuse Reporting laws impose a duty on law enforcement officers to report child abuse to local DHS if there is reasonable cause to believe abuse has occurred. O.R.S. § 419B.010.

80.

Det. Sgt. Wright was shown a video in 2018 by Jane Doe's mother of Jane Doe, a thirteen-year-old girl, performing oral sex on an adult male, which corroborated Jane Doe's claims. Any rational police officer with decades of training and experience could find

reasonable grounds to believe abuse had occurred based solely on that piece of evidence. Jane Doe was never contacted by DHS or the SART at any point for questioning or to offer victim assistance even though she was a child, alerting officials to abuse she suffered.

81.

Det. Sgt. Wright's abject failure to investigate, coupled with his open statements that he believed Jane Doe was lying because she was a young woman, is a violation of Jane Doe's constitutionally guaranteed right of Equal Protection. Det. Sgt. Wright's insistence that Jane Doe bring him the evidence, as opposed to him doing his job, caused her significant additional pain and emotional distress as it forced her to continue to interact with a deranged child-rapist for more than two years.

82.

Any reasonable police officer could foresee the emotional distress, mental anguish, and disruption to a thirteen-year-old's life by not undertaking any effort to identify or apprehend a perpetrator after video evidence of the crime is shown. It is common knowledge that coming forward with evidence of being a victim of such a crime shrouded in shame should be applauded, not derided, as being indicative of not telling the whole story.

83.

Det. Sgt. Wright's actions directly placed Jane Doe in increased danger because she felt as though she had to maintain contact with her abuser to be afforded justice. Det. Sgt. Wright told her to bring a photo of her abuser, as well as his full name, and she did as she was told.

84.

Det. Sgt. Wright's failure to investigate or take Jane Doe's case seriously in any capacity, based on his discriminatory animus, led to Jane Doe not being afforded assistance under Oregon Crime Victims' Compensation. Det. Sgt. Wright never told her about the program or forwarded

the case to the county district attorney's office. As a result, Jane Doe missed out on accessing thousands of dollars for medical and counseling services, including counseling for her family (since she was a minor at the time of abuse), to which she would have been eligible. *Crime Victims' Compensation, CVC Brochure English* (2021), *https://www.doj.state.or.us/wp-content/uploads/2021/11/CVC-Brochure-English.pdf*.

85.

Det. Sgt. Wright's actions and inactions re-victimized a young victim who had suffered appalling abuse. Jane Doe was forced to endure two additional years of abuse which exacerbated her emotional distress. Det. Sgt. Wright prevented her from obtaining her right to victims' compensation and put her life in danger directing her to work on her own investigation. As a result, Jane Doe withdrew completely from high school. Due to the abuse Jane Doe endured, coupled with Defendant Wright's willful dismissal of Jane Doe's need to access the criminal justice system, she will likely require a lifetime of therapy. As a result, Jane Doe is seeking damages of approximately $100,000 to be proven at trial, plus emotional distress damages of $2.5 million, plus punitive damages of $23.5 million. Jane Doe also claims her right to attorney fees and costs. Nominal damages are allowed.

**B. *Count Two: As to Defendants Lieutenant Kennedy and Chief Huxel***

86.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

87.

Lt. Kennedy and Chief Huxel were employed by the UPD and acting in their official capacities during all material times regarding this matter. They also served in a supervisory role to Det. Sgt. Wright as his superiors.

//

88.

From March 2018 until April 2022, Jane Doe was a minor female, and therefore counted as part of a protected class under the Fourteenth Amendment Equal Protection Clause.

89.

Jane Doe's right to Equal Protection was violated as described in Count One above.

90.

Supervisors may be held liable under 42 U.S.C. § 1983 if they indirectly violated plaintiff's rights by facilitating, encouraging, condoning, acquiescing in, or by having had final say in the subordinate's violation of the plaintiff's constitutional deprivations. *See, Jones v. Adams Cnty., Wisconsin,* 297 F. Supp. 2d 1132, 1137 (W.D. Wis. 2003).

91.

As Chief of Police and Lieutenant in the UPD, Chief Huxel and Lt. Kennedy hold a supervisory role over Det. Sgt. Wright in his position as Detective Sergeant. Furthermore, a duty is imposed on law enforcement officers to prevent other officers from violating the constitution by state and federal law. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

92.

Det. Sgt. Wright's violation of Jane Doe's constitutional right to equal protection occurred over several years. One event, which spans years, has been found to be enough to show policy, pattern, or practice. It is inconceivable that as supervisors, Lt. Kennedy and Chief Huxel did not know of a reported sexual assault of a minor by an unknown out-of-state actor with video evidence and the consequential mishandling of the case over more than a two-year period by their subordinate. The fact that Jane Doe's case was never properly investigated, never sent to the prosecutor's office for review, never referred to child protective services or the Sexual Assault Response Team, nor referred to the Internet Crimes Against Children division, highlights

that Jane Doe was never afforded her right to police services free from discrimination, or her rights under Oregon Victims Right Act. These facts are dispositive that there was inadequate supervision. The failure to act by Chief Huxel and Lt. Kennedy encouraged, condoned, and acquiesced, to their subordinate, Det. Sgt. Wright's violation of Jane Doe's rights.

93.

Chief Huxel and Lt. Kennedy were extremely reckless and grossly negligent in their supervision of Det. Sgt. Wright. It was foreseeable that Jane Doe would suffer injuries based on the cruel indifference of the UPD and the abject failure of the chain of command to remedy the constitutional violations perpetrated by Det. Sgt. Wright. As a result, Jane Doe is seeking damages of approximately $100,000 to be proven at trial, plus emotional distress damages of $2.5 million, plus punitive damages of $23.5 million. Jane Doe also claims her right to attorney fees and costs. Nominal damages are allowed.

***C. <u>Count Three: As to the City of Umatilla</u>***

93.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

94.

Count Three is plead by Jane Doe against Defendant City of Umatilla as a municipality and in its official capacity.

95.

To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy "amounts to deliberate indifference" to constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Connick v. Thompson*, 563 U.S. 51 (2011). If a program

does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. The City's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action, the "deliberate indifference" necessary to trigger municipal liability. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).

96.

A constitutional violation may arise from training or supervision where the training or supervision is sufficiently inadequate as to constitute "deliberate indifference" to the rights of persons with whom the police come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). *Canton* dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989).

97.

"There is no case law indicating that a custom cannot be inferred from a pattern of behavior toward a single individual, and a reasonable jury may conclude that such delay tactics amount to a Corizon custom or practice of deliberate indifference to prisoners' serious medical need." *Oyenik v. Corizon Health Inc.*, 696 Fed. Appx. 792, 794–95 (9th Cir. 2017) (unpublished).

98.

The lack of training and oversight by the City gave consent to the police force they are tasked with monitoring, ensuring adequate training and holding accountable violations of Jane Doe's rights over several years. Because there was no policy in place or attempt to monitor UPD's handling of child sexual assault victims, ensuring equal protection or due process, the

City demonstrated a deliberate indifference to the rights of Jane Doe. Furthermore, even after the 2022 DOJ press release regarding the horrific nature of Jane Doe's case, and the utter lack of any UPD investigation, the City continued their practice of willful blindness and complete lack of oversight, thus further demonstrating a custom or policy.

99.

As a result, Jane Doe is seeking damages of approximately $100,000 to be proven at trial, plus emotional distress damages of $2.5 million. Jane Doe also claims her right to attorney fees and costs. Nominal damages are allowed.

**<u>Second Claim for Relief</u>**

**Violation of Due Process Under 42. U.S.C. § 1983**

**(As to Defendants Wright, Huxel, and Kennedy)**

100.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

101.

The Second Claim for Relief is plead by Plaintiff against Defendants Wright, Huxel, and Kennedy, in their individual capacities.

102.

Jane Doe was the victim of multiple crimes committed by the Predator in the jurisdiction the Defendants serve as law enforcement officers.

103.

Under the Oregon State Constitution, the United States Constitution, and the Omnibus Crime Control and Safe Street Act of 1968, Jane Doe had the right to be free from discrimination based on sex.

//

104.

The Oregon Victims' Rights Act provides rights for victims of crimes, specifically monetary compensation for sexual assault victims. It is a prerequisite to accessing the assistance of the Victims' Rights Act that law enforcement officers make a good faith preliminary determination that a crime has been committed.

105.

Jane Doe had a right to police protective services, including an investigation, free from discrimination based on sex. Moreover, Jane Doe had a right to protective services beyond an investigation because Det. Sgt. Wright placed her in more danger by insisting that she, a thirteen-year-old female victim of sexual abuse, investigate her own abuser, which necessarily required more contact with him.

106.

The Defendants, with deliberate indifference to the law and to Jane Doe's rights, failed to make a good faith preliminary determination whether a crime had been committed, and failed to do so based on discrimination and bias. They abjectly failed to make anything approaching a good faith effort to afford Jane Doe her rights under the United States Constitution, Federal Statute, or the Oregon Crime Victims Act.

107.

In doing so, the Defendants deprived Jane Doe of liberty and property rights without due process of law, and an adequate justification for doing so. As a result, Jane Doe is seeking damages of approximately $100,000 to be proven at trial, plus emotional distress damages of $2.5 million, plus punitive damages of $23.5 million. Jane Doe also claims her right to attorney fees and costs. Nominal damages are allowed.

//

**<u>Third Claim for Relief</u>**

**Negligence *Per Se***

**(As to Defendant Wright Only)**

108.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

109.

The Third Claim for Relief is plead by Plaintiff against Det. Sgt. Wright in his individual capacity.

110.

Oregon statutes requiring a referral to Human Services in child sexual assault claims imposes a duty on police officers to report child sexual assault in a specified manor within a specified time period. Furthermore, the Omnibus Crime Control and Safe Streets Act of 1968 ("Streets Act") prohibits any law enforcement agency who receives federal funding from discriminating based on gender.

111.

The statute is clearly intended to involve sexual assault professionals in the early stages of a minor sexual assault investigation to provide critical services to both the victim and the police agency in the early stages of an investigation. The Streets Act was passed to ensure discrimination based on gender did not occur within law enforcement agencies.

112.

Jane Doe was a minor female who was sexually assaulted by an adult and therefore the class of victims both the statute and Streets Act intended to protect.

//

//

113.

Det. Sgt. Wright had no reasonable grounds, based on the evidence Jane Doe and her family provided, to refuse to forward her case to the local human services office, thus denying her the protections the statute intended. His words and actions are sufficient to show that the decision not to afford Jane Doe with any statutory or constitutional right was based on a discriminatory animus towards young women.

114.

Because Det. Sgt. Wright violated the state statute, standard procedure, and Streets Act, Jane Doe suffered economic damages in the amount of $100,000 and emotional distress damages in the amount of $2.5 million. Jane Doe also claims her right to attorney fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff prays for relief as follows on her Claims:

1) On her First Claim for Relief, Count One, for Plaintiff's actual damages, in the amount of approximately $100,000, or an amount to be proven at trial, plus pretrial interest, plus emotional distress damages of 2.5 million, plus $23.5 million in punitive damages, plus attorney fees and costs;
2) On her First Claim for Relief, Count Two, for Plaintiff's actual damages, in the amount of approximately $100,000, or an amount to be proven at trial, plus pretrial interest, plus emotional distress damages of 2.5 million, plus $23.5 million in punitive damages, plus attorney fees and costs;
3) On her First Claim for Relief, Count Three for Plaintiffs' actual damages, in the amount of approximately $100,000, or an amount to be proven at trial, plus pretrial interest, plus emotional distress damages of 2.5 million, plus $23.5 million in punitive damages, plus attorney fees and costs;

4) On her Second Claim for Relief for Plaintiff's actual damages, in the amount of approximately $100,000, or an amount to be proven at trial, plus pretrial interest, plus emotional distress damages of 2.5 million, plus attorney fees and costs;
5) On her Third Claim for Relief for Plaintiff's actual damages, in the amount of approximately $100,000, or an amount to be proven at trial, plus pretrial interest, plus emotional distress damages of 2.5 million, plus attorney fees and costs;
6) On all Plaintiff's Claims for Relief for her attorney fees, and all costs and disbursements incurred herein;
7) Any other relief the Court finds right and just.

**DEMAND JURY TRIAL**

The Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

DATED: March 8, 2023

/s/ Terry Scannell
SCANNELLAW, LLC
Terry Scannell, OSB No. 853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB No. 093777
*chris@scannellaw.com*
7307 Beveland St., Ste. 200
Tigard, Oregon 97223
(503) 776-0806
*Attorneys for Plaintiff*

/s/ Patrick M. Gregg
COREY BYLER & REW, LLP
Patrick M. Gregg, OSB No. 093698
*gregg@corey-byler.com*
PO Box 218
Pendleton, OR 97801
(541) 276-3331
*Attorney for Plaintiff*