IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| JANE DOE, | Case No. 2:23-cv-00332-HL |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| BILL WRIGHT AND CITY OF UMATILLA, | |
| Defendants. | |

HALLMAN, United States Magistrate Judge:

Plaintiff Jane Doe filed a Second Amended Complaint ("SAC"), ECF 65, naming the City of Umatilla ("City") and Bill Wright ("Wright"), a former Detective Sergeant with the Umatilla Police Department, as Defendants. Plaintiff is proceeding under a pseudonym to protect her identity. In addition, to protect certain allegations against Wright, she moved to file the Second Amended Complaint under seal. ECF 63. Wright filed a Motion to Strike certain

PAGE 1 – OPINION AND ORDER

allegations from the complaint, ECF 70, in which the City joins, ECF 72. The City has also moved to dismiss the allegations against it for failure to state a claim for relief. ECF 71.[1]

For the reasons discussed below, this Court orders the following: the City's Motion to Dismiss is GRANTED, and the claims against the City are dismissed WITH PREJUDICE. The Motion to Strike is GRANTED in part and DENIED in part. Plaintiff's Motion to Seal the Second Amended Complaint is GRANTED. Plaintiff is directed to file a Third Amended Complaint, not under seal, that does not contain the material in paragraphs 10, 12–17, 19, and 82 of the Second Amended Complaint. With respect to Plaintiff proceeding under a pseudonym, the Parties are directed to confer regarding a supplemental protective order that will limit the need for filings under seal and ensure the public's right to observe court proceedings while maintaining Plaintiff's confidentiality.

## MOTION TO DISMISS

This Court previously concluded that (1) Plaintiff stated a claim that Wright violated her right to equal protection, and (2) he was not entitled to qualified immunity when he allegedly denied protective services to her based on her gender. Op. & Order 9–21, ECF 27. In that Opinion, this Court also dismissed Plaintiff's *Monell* claims against the City, in part because she "failed to plead with particularity that the City had a custom or practice to discriminate against female victims of sexual assault." *Id.* at 27. Plaintiff has now repleaded that claim, asserting that the City delegated its policymaking in the area of criminal investigations to Wright, and that he was acting as a policymaker when he allegedly denied protective services to Plaintiff on the basis of her gender. Pl.'s Resp. to Mot. to Dismiss 7, ECF 73. For the reasons discussed below, Plaintiff has not pleaded facts that would plausibly demonstrate that Wright was acting as a

---

[1] This Court concludes that this matter can be appropriately resolved without oral argument.

policymaker. The City's motion is therefore GRANTED, and the claims against the City are dismissed WITH PREJUDICE.

I.  **Standard of review.**

A Fed. R. Civ. P. ("Rule") 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)); *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

PAGE 3 – OPINION AND ORDER

*see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

## II.     *Monell* liability.

Under the Supreme Court's holding in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), a municipal entity may be held liable under 42 U.S.C. § 1983 when a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694. To establish *Monell* liability, a plaintiff must allege that (1) she was deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiff's constitutional right; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation modified).

A *Monell* claim for 42 U.S.C. § 1983 liability against a public entity may be stated in one of three circumstances: (1) a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or (3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citation modified). "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

"Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Id.* at 415.

As relevant here, "[a] choice made by a municipal officer with final policy-making authority . . . may also serve as the *Monell* hook for municipal liability." *Ash v. City of Portland*, No. 3:24-CV-434-SI, 2024 WL 4794542, at *9 (D. Or. Nov. 14, 2024) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482–83 (1986)); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481–82. Rather, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 482–83. To determine whether an official has final policy-making authority, courts look to state law. *Praprotnik*, 485 U.S. at 124. "[S]tate law (which may include valid local ordinances and regulations) will *always* direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* at 125 (emphasis added).

"When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.* at 127. "Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." *Id.* Conversely, "[a]n official may be found to have been delegated final policymaking authority where the official's discretionary decision is not constrained by policies not of that official's making and not subject to review by

PAGE 5 – OPINION AND ORDER

the municipality's authorized policymakers." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 986 (9th Cir. 2002) (citation modified) (citing *Christie v. Iopa*, 176 F.3d 1231, 1236–37 (9th Cir. 1999)).

### III.    Supplemental background.

In the prior Opinion and Order, this Court set forth in detail the factual allegations underlying Plaintiff's claims, Op. & Order 3–8, and it incorporates that discussion herein. In the Second Amended Complaint, Plaintiff pleads additional facts with respect to the *Monell* claim that are discussed below and presumed true for purposes of this analysis.[2]

Plaintiff's *Monell* claim is predicated on her assertion that Wright was acting as a policymaker when he engaged in gender-based discrimination in his criminal investigations. SAC ¶¶ 80-89; Pl.'s Resp. to Mot. to Dismiss 7. To that end, Plaintiff alleges the following concerning Wright's conduct as policymaker:

> 27.    On or about February 16, 2005, [] Wright was assigned lead investigator for all criminal cases investigated by the City's police department and remained in that position at all material times.
>
> 28.    On or about February 16, 2005, until January 19 of 2023, the City's police department, through Chief Huxel, delegated final policy making decisions to [] Wright regarding all criminal investigations.
>
> 29.    At all material times, neither Lt. Kennedy nor Chief Huxel supervised nor reviewed [] Wright's criminal investigations.
>
> 30.    At all material times, the City provided no supervision or review of [] Wright's criminal investigations. In part this is evidenced by the fact that [] Wright would write his own reports on investigations and as a matter of policy no one would review those reports.

---

[2] Plaintiff also includes excerpts of the deposition of Wright with his response to the motion to dismiss. Pl.'s Resp. to Mot. to Dismiss Ex. 1, ECF 73-1. This Court does not consider extrinsic evidence when evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), and, in any event, Wright's alleged denial that he violated any City policies does not impact this Court's *Monell* analysis.

PAGE 6 – OPINION AND ORDER

SAC ¶¶ 27–30. Plaintiff also alleges that both Chief Huxel and Lt. Kennedy had supervisory authority over Wright. *Id.* at ¶¶ 23, 26. In 2023, Chief Huxel exercised that supervisory authority when she implemented a new policy prohibiting Wright from reviewing his own reports. *Id.* at ¶ 71. Plaintiff also alleges that Wright remained subject to numerous Department policies and violated them with his conduct in this case. *Id.* at ¶ 69.

IV.   Analysis.

Plaintiff's new allegations fail to plausibly demonstrate that Wright was acting as a policymaker when he was allegedly given authority over criminal investigations and then engaged in gender-based discrimination in those investigations.

First, Plaintiff does not raise or cite any authority—whether a local ordinance, regulation, or state statute—establishing that a municipality or the Police Chief can delegate final policy making decisions regarding criminal investigations to a subordinate officer. Plaintiff cites several policies from the City of Umatilla and Umatilla Police Department, but she does so only for the proposition that Wright's conduct in the present case *violated* those policies. *Id.* at ¶ 69. There is no assertion that Wright was properly delegated authority for criminal investigations as a matter of Oregon state law, whether through State statute or Rule or under the City's municipal authority.³ Because state law "will always direct a court to some official or body" with that responsibility, *see Praprotnik*, 485 U.S. at 124, and because there are no allegations that state

---

³ Although numerous Oregon statutes govern police power and policing in Oregon, Oregon does not have a general statutory scheme that authorizes municipalities to establish a police department and exercise police power. Rather, under home-rule authority, cities have the power to adopt a policy or ordinance regarding policing "so long as 'it conflicts with neither a constitutional provision nor with a statute, and if it constitutes a proper exercise of the city's police power.'" *Owen v. City of Portland*, 368 Or. 661, 686 (2021) (citing *Covey Drive Yourself & Garage v. City of Portland*, 157 Or. 117 (1937)). Thus, the relevant Oregon state law governing criminal investigations would likely be a City policy or ordinance or the City's general exercise of police power.

PAGE 7 – OPINION AND ORDER

law allowed for the delegation of the City's police power to a subordinate officer, Plaintiff has failed to demonstrate, as a matter of law, that the City delegated authority to Wright for purposes of *Monell* liability.

Even if it were not necessary for Plaintiff to point to some source of state law for the delegation, she still could not establish a *Monell* violation based on the facts pleaded in the complaint. Although Plaintiff alleges that the City delegated "policy making decisions" to Wright, the factual allegations do not plausibly support a conclusion that Wright was acting as a policymaker for purposes of *Monell* liability. The fact that Wright allegedly had "discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 481–82. To the contrary, Wright's decision-making was constrained by policies not of his making, which is evidenced by the fact that his actions in this case *violated* multiple municipal policies. SAC ¶ 69. And his actions were ultimately subject to review by the City's authorized policymakers, which is evidenced by the fact that Wright's supervisors revoked his authority to review his own reports as a result of this matter. *Id.* at ¶ 71. Therefore, Wright was not acting as a final policymaker for purposes of *Monell* liability. *See Ulrich*, 308 F.3d at 986; *Nguyen v. City of San Jose*, No. 5:21-CV-00092-EJD, 2022 WL 912891, at *12 (N.D. Cal. Mar. 29, 2022) (police officer with authority for investigating certain crimes was delegated discretion to act, not policymaking authority).

In sum, because Plaintiff's *Monell* claims against the City are predicated on the theory that Wright was acting as a final policymaker, and because the allegations do not plausibly suggest that he was acting as a final policymaker, those claims are subject to dismissal under Rule 12(b)(6). Further, because Plaintiff has had prior opportunities to amend her complaint, her claims against the City are dismissed WITH PREJUDICE and WITHOUT LEAVE TO

AMEND. *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (explaining that discretion to deny leave to amend is particularly broad when a plaintiff has had prior opportunities to amend).

## MOTION TO STRIKE

Wright moves to strike portions of Plaintiff's Second Amended Complaint—specifically paragraphs 10–19, 61–63, and portions of paragraphs 65 and 82—that pertain to (1) his alleged sexual misconduct prior to and during his employment with the City and (2) allegations regarding another victim of the same perpetrator. Mot. to Strike, ECF 70. For the following reasons, Wright's motion is GRANTED in part and DENIED in part, and this Court strikes paragraphs 10, 12–17, 19, and 82. Plaintiff is directed to file a Third Amended Complaint—not under seal—without any reference to the allegations in those paragraphs.

### I.  Standard of review.

The Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation modified), *rev'd on other grounds*, 510 U.S. 517 (1994). Matter is immaterial if it lacks an "'essential or important relationship to the claim for relief or the defenses being pleaded.'" *Id.* (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706–07 (1990)). "Scandalous matters are allegations that 'unnecessarily reflect on the moral character of an individual or state anything in repulsive language that detracts from the dignity of the court,' and 'include allegations that cast a cruelly derogatory light on a party or other person.'" *Cantu v. City of Portland*, No. 3:19-CV-01606-SB,

2020 WL 2952972, at *2 (D. Or. June 3, 2020) (citation modified) (quoting *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009)).

"'Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-CV-00388-IM, 2024 WL 5264652, at *5 (D. Or. Dec. 31, 2024) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)). Courts view the pleading "in the light more favorable to the pleader." *Bassiri v. Xerox Corp.*, 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003), *rev'd on other grounds*, 463 F.3d 927 (9th Cir. 2006). "A court granting a Rule 12(f) motion should generally grant leave to amend, unless the amendment would be futile." *Freeman v. Alta Bates Summit Med. Ctr. Campus, et al.*, No. C 04-2019 SBA, 2004 WL 2326369, at *2 (N.D. Cal. Oct. 12, 2004) (internal citations omitted).

**II.    Analysis.**

    **A.    Wright's alleged sexual misconduct.**

Plaintiff alleges that Wright engaged in sexual misconduct with women before and after his employment with the City. SAC ¶¶ 10, 12–17. Plaintiff further alleges that the City knew about that alleged misconduct, *id*. at ¶¶ 19, 82, and nevertheless delegated him authority for criminal investigations, as discussed above. Plaintiff alleges that, due to that knowledge, "these allegations are not only timely—they are legally indispensable to [her] *Monell* claim and must be permitted to proceed." Pl.'s Resp. to Mot. to Strike 12, ECF 74; *see also id.* at 13 (arguing that the allegations are "directly relevant to Plaintiff's *Monell* theory of liability against the City" because they "support the City's deliberate indifference in delegating final policymaking authority to a known offender whose misconduct had already been documented"). Plaintiff does

not allege that the allegations of sexual misconduct are relevant to the claims against Wright individually. *See* SAC ¶¶ 78–79.

This Court agrees with Wright that these allegations are impertinent and immaterial, albeit for different reasons than those he advances. Simply put, because the allegations regarding Wright's sexual misconduct are advanced in support of the *Monell* claim, and the Court has now dismissed that claim, the allegations no longer have any "possible bearing on the subject matter of the litigation." *A.B.*, 2024 WL 5264652, at *5. The allegations are therefore immaterial.[4] Accordingly, Wright's Motion to Strike the allegations in paragraphs 10, 12–17, 19, and 82 concerning his alleged sexual misconduct is GRANTED.[5] Plaintiff is directed to file a Third Amended Complaint—not under seal—without any reference to the allegations in those paragraphs.

B.     **Allegations concerning Jane Doe 2.**

Plaintiff's Second Amended Complaint includes allegations that another minor female, Jane Doe 2, was contacted by the same perpetrator, and that she reported her allegations to another police department. SAC ¶¶ 61–63. Plaintiff further alleges that, after her mother learned of Jane Doe 2, Plaintiff's mother "called the FBI herself because it was apparent to her that the City would not stop the abuse." *Id.* at ¶ 65. Wright argues that these allegations are immaterial and impertinent because they concern allegations reported to another police department, and Wright was not directly involved in them. Mot. to Strike 8. This Court disagrees. While the

---

[4] Because this Court concludes that the allegations are immaterial, it need not consider whether they are also scandalous.

[5] Wright asserts that if Plaintiff maintains that Wright's alleged sexual misconduct is "relevant to prove motive or anything else at trial, she can file a motion *in limine*; this Motion to Strike does not seek any prejudice to Plaintiff's future rights to raise these issues *in limine* where a more complete evidentiary hearing can take place." Mot. to Strike 8. This Court agrees and does not address whether Wright's alleged prior sexual misconduct would be admissible at trial.

PAGE 11 – OPINION AND ORDER

admissibility and evidentiary value of these allegations is unsettled, it is readily apparent that the allegations bear on Plaintiff's mother's decision to contact the FBI and her alleged realization that the City would not stop the abuse. Accordingly, Wright's Motion to Strike those allegations is DENIED.

## PLAINTIFF'S USE OF A PSEUDONYM AND MOTION TO SEAL

Plaintiff initially filed this case under a pseudonym without objection from Defendants. And the Court previously concluded that this is the "unusual case" where anonymity is necessary "to preserve privacy in a matter of sensitive and highly personal nature." Op. & Order 3 n.1 (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000)). But the Court also noted that it must determine whether to allow Plaintiff to remain anonymous at "each stage of the proceedings." *Id*.

Plaintiff moved to file the Second Amended Complaint under seal, which Defendants initially opposed. Pl. Mot. Seal, ECF 63. Then, in the motion to strike, Wright took the position that, if the Court requires public rather than sealed filings in this case, then it should also require Plaintiff to proceed using her name. Mot. to Strike 2. For her part, Plaintiff objects to proceeding under her real name but asserts that the Second Amended Complaint can be unsealed, as it was filed under seal "[s]oley out of consideration" for Wright. Pl.'s Resp. to Mot. to Strike 5.

Given this Court's resolution of the Motion to Strike, it is appropriate to seal the Second Amended Complaint, which will no longer be the operative pleading. Plaintiff's motion to seal is therefore GRANTED. Subsequent complaints, however, including the Third Amended Complaint, should not be filed under seal.

As to Plaintiff's anonymity, at this stage of the proceedings, this Court adheres to its prior conclusion that maintaining Plaintiff's anonymity is necessary "to preserve privacy in a matter of

sensitive and highly personal nature." *See Does I thru XXIII*, 214 F.3d at 1068 (citation modified). The necessity of Plaintiff's anonymity has no bearing on whether information concerning Wright must be filed under seal, and, as discussed above, this Court has now struck the disputed allegations concerning Wright. Therefore, Plaintiff may continue to proceed under a pseudonym through dispositive motions.

But this Court must determine whether to allow Plaintiff to remain anonymous at "each stage of the proceedings." *Id*. Given that Plaintiff is now an adult, this Court will not permit Plaintiff to proceed under a pseudonym *at trial* if doing so would result in prejudice to Wright at trial or jeopardize the public's access to Court proceedings. Therefore, the Parties are directed to confer regarding a supplemental protective order that will limit the need for filings under seal and ensure the public's right to observe court proceedings while also maintaining Plaintiff's confidentiality.[6] If the Parties cannot agree on the scope of a supplemental protective order, then Plaintiff should file a motion for a protective order regarding maintaining her confidentiality at trial.

## CONCLUSION

The City's Motion to Dismiss, ECF 71, is GRANTED, and the claims against the City are dismissed WITH PREJUDICE. Wright's Motion to Strike, ECF 70, is GRANTED in part and DENIED in part. Plaintiff's Motion to Seal the Second Amended Complaint, ECF 63, is GRANTED. Plaintiff is directed to file a Third Amended Complaint—not under seal—that does not contain the material in paragraphs 10, 12–17, 19, and 82 of the Second Amended Complaint.

---

[6] The current protective order, ECF 33, does not address the confidentiality of testimony and documents pertaining to Plaintiff's identity at trial.

PAGE 13 – OPINION AND ORDER

With respect to Plaintiff proceeding under a pseudonym, the Parties are directed to confer regarding a supplemental protective order concerning Plaintiff's anonymity at trial.

    IT IS SO ORDERED.

    DATED this 14th day of August, 2025.

_____
ANDREW HALLMAN
United States Magistrate Judge